IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| JAMES H. CHANCEY, JR., | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-10-0032 |
| NORTH AMERICAN TRADE SCHOOLS INC., *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

James H. Chancey, Jr., sued EFC Trade Inc. IV, North American Trade Schools Inc., and Matthew Daly (collectively, the "defendants") for retaliation and discriminatory discharge based on race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and § 1981 of the Civil Rights Act of 1866 ("§ 1981").[2] For the following reasons, the defendants' motions to strike and for summary judgment will be granted.

---

[1] 42 U.S.C. §§ 2000e *et seq.*

[2] 42 U.S.C. § 1981.

I.  Background[3]

EFC Trade Inc. IV ("EFC Trade") is a Baltimore commercial driving trade school. Am. Compl. ¶ 8; ECF No. 10 at 1. It does business as North American Trade Schools. Daly Aff. ¶ 2. Daly is the school director. Daly Aff. ¶ 2. North American Trade Schools Inc. ("NATS Inc.") is a corporation with its principal place of business in Baltimore. Am. Compl. ¶ 4. Daly is its resident agent. ECF No. 13, Ex. C.

On August 16, 2006, EFC Trade hired Chancey, an African-American, as a full-time, weekday commercial driving instructor. Am. Compl. ¶¶ 4, 11; Daly Aff. ¶ 3. He taught students how to drive and fix tractor trailers. Am. Compl. ¶ 11. On June 6, 2007, Chancey was disciplined for violating the company policy on scheduling student driving time. Daly Aff. ¶ 6. On June 12, 2007, a supervisor spoke to him "about the need to maintain a professional demeanor when interacting with students." *Id*. On July 16, 2007, Chancey was disciplined for misusing sick leave. *Id*.[4]

On July 14, 2007, Chancey attended a meeting with his supervisor, Michael Bourne. Am. Compl. ¶ 12. Bourne, an

---

[3] In reviewing the motion for summary judgment, Chancey's evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[4] Chancey had called in sick, but was seen "complet[ing] personal business" at EFC Trade's business office. Daly Aff. ¶ 6.

2

African-American, called Anthony Bills, an elderly African-American employee, a racial epithet. *Id*. After Bills objected, Bourne used a non-racial vulgarity when telling the attendees they could leave "if they did not like his language." *Id*. That day, Chancey wrote a report of Bourne's slur and "shared it with upper management." *Id.* ¶ 13.

On July 22, 2007, Chancey completed a "Disciplinary Action Notice" (the "Discipline Notice") recommending Bourne's termination for, *inter alia*, "profanity," "improper conduct," "destruction of company property," and "total disrespect" for Bills. ECF No. 10, Ex. 2. It did not mention race or Bourne's slur. That day, Chancey gave the Discipline Notice to Bourne and Daly and told Daly about the slur. Am. Compl. ¶ 13.[5] He "t[old] Mr. Daly about what went on in the meeting, and [his] disgust that Mr. Bourne treated Mr. Bills with such contempt, and used that ugly racist word in a professional workplace." Chancey Aff. ¶ 4.

That day, Daly terminated Chancey on Bourne's recommendation. Am. Compl. ¶ 14; Daly Aff. 7. On July 24, 2007, Chancey was informed of his discharge. Chancey Aff. ¶ 7. Chancey was told he had been discharged because there was insufficient work

---

[5] *See* Compl. ¶ 13 (Chancey gave the Discipline Notice to Bourne and Daly on July 22, 2007); Chancey Aff. ¶ 4 ("I gave the [Discipline Notice] to both Mr. Daly and Mr. Bourne. That day, I [told] Daly about [the slur].").

3

for him because of declining student enrollment. Am. Compl. ¶ 14. On July 27, 2007, Daly gave him a letter of recommendation.[6]

Other commercial driving instructors were discharged in 2007 because of the reduced student population. Daly Aff. ¶ 8. The defendants assert that Chancey was terminated before the other instructors "because he had a recent history of disciplinary infractions." *Id.* ¶ 5.

After Chancey's termination, EFC Trade needed a part-time, weekend instructor. *Id.* ¶ 9. Daly attempted to offer Chancey this job, but the phone number Chancey had "provided to EFC Trade was no longer operational." *Id.* Chancey, who does not know what number Daly used, "would have taken the job if offered." Chancey Aff. ¶ 10.

On August 9, 2007, Chancey filed retaliation and race discrimination charges with the Maryland Commission on Human Relations against "North American Trade Schools," EFC Trade's trade name. ECF No. 10, Ex. 3. That day, he also completed an Equal Employment Opportunity Commission ("EEOC") charge information questionnaire. ECF No. 13, Ex. H. He charged EFC Trade with retaliation and race and age discrimination. *Id.*

---

[6] *See* ECF No. 13, Ex. G at 1 (Chancey had been "a true testament of what a great employee should be," "always conducted himself in a professional manner," and was "a true pleasure to have as an employee").

4

On August 10, 2007, EFC Trade hired a Caucasian male for the part-time, weekend position. Daly Aff. ¶ 9. On August 12, 2007, Chancey filed "discrimination and retaliation" charges with the EEOC. Am. Compl. ¶ 9. On October 9, 2009, the EEOC issued a right-to-sue letter. *Id.* ¶ 10.

On January 6, 2010, Chancey sued NATS Inc. and Daly under Title VII for retaliation and discriminatory discharge based on race. On May 13, 2010, he amended his complaint by (1) adding EFC Trade as a defendant, and (2) adding § 1981 retaliation and discriminatory discharge claims against all defendants. On May 27, 2010, the defendants moved to dismiss or, in the alternative, for summary judgment, and to strike Paragraph 18 of the amended complaint. ECF No. 10. On June 28, 2010, Chancey opposed that motion. ECF No. 13. On July 21, 2010, the defendants filed their reply. ECF No. 16.

II. Analysis

  A. Motion to Strike

The defendants seek to strike Paragraph 18 of the amended complaint under Fed. R. Civ. P. 12(f), which provides that a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." ECF No. 10 at 30–33. Paragraph 18, which contains the EEOC's findings, states:

> On August 18, 2009, the EEOC issued a formal determination finding that NATS [Inc. and EFC Trade] violated Title VII by illegally terminating Chancey's employment in retal-

iation for his engaging in protected activity when he complained about racial harassment of Anthony Bills by Chancey's supervisor. Specifically, the EEOC determined that Chancey "confronted and challenged his [commercial driving] supervisor's [sic] for an incident of improper conduct and a violation of company rules that included a sever[e] episode of racial harassment and calling a senior employee the 'N' word; and proceeded to express his opposition and objection to the Supervisor[']s conduct by filling out a 'Disciplinary Action Notice' [and] giving his supervisor a copy."

Am. Compl. ¶ 18.

The defendants assert that Paragraph 18 is "immaterial" and "highly prejudicial." ECF No. 10 at 30. Chancey argues that the motion is a "very premature motion in limine," and that the likelihood that a juror will see the complaint as an exhibit is "remote." ECF No. 13 at 11.

The defendants' motion is timely; they filed it with their motion to dismiss. *See* Fed. R. Civ. P. 12(f)(2) (party must file motion to strike before responding to the pleading).

Because federal district courts review discrimination claims *de novo*, the EEOC findings are "immaterial to [Chancey's] causes of action."[7] Also, Chancey's inclusion of these prejudicial findings when he has demanded a jury trial and admits that a juror might see the complaint may be an attempt to evade

---

[7] *Chapman v. Duke Energy Carolinas, LLC*, No. 3:09-cv-37RJC, 2009 WL 1652463, at *2 (W.D.N.C. June 11, 2009) (striking EEOC's findings that the plaintiff "was retaliated against" and "subject to different terms and conditions" due to race).

the Federal Rules of Evidence.[8]  The defendants' motion to strike will be granted.

B. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment

1. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. The Court should "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

If the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, it treats the motion as one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).  "When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment."  *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

---

[8] *See* Am. Compl. 2 ("Demand for Jury Trial"); Fed. R. Evid. 403 (excluding evidence more prejudicial than probative); *Ledford v. Rapid-Am. Corp.*, No. 86 Civ. 9116 (JFK), 1988 WL 3428, at *2-*3 (S.D.N.Y. Jan. 8, 1988) (EEOC's determination that defendants probably committed age discrimination was stricken from the complaint as violating Fed. R. Evid. 403).

7

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

2. Chancey's Title VII Claims May Be Maintained Only Against
   EFC Trade

Under Title VII, Chancey seeks to hold Daly liable individually or as a "potential corporate trustee" of NATS Inc. *See*

8

Am. Compl. ¶ 6; ECF No. 13 at 10. Title VII does not authorize claims against individuals, only against employers or employment agencies. 42 U.S.C. § 2000e-2; *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998); *Ahmed v. Schnatter*, No. S 00-2160, 2001 WL 1924523, at *2 (D. Md. Feb. 8, 2001). Thus, only Chancey's § 1981 claims may be maintained against Daly.

Chancey also seeks to hold NATS Inc. liable under Title VII. *See* Am. Compl. ¶¶ 19-31. Because it is undisputed that NATS Inc. was not Chancey's employer,[9] only his § 1981 claims may be maintained against it. *Ahmed*, 2001 WL 1924523, at *2.

Accordingly, Chancey's Title VII claims may be maintained only against his employer, EFC Trade.[10]

3. Title VII and § 1981 Discriminatory Discharge Claims[11]

Chancey asserts that the defendants violated Title VII and § 1981 by terminating him on the basis of race. Am. Compl. ¶¶

---

[9] Chancey argues that NATS Inc., which used a "North American Trade Schools" letterhead, "responded to [his] charge and co-operated with the EEOC." ECF No. 13 at 10. He has not argued that NATS Inc. was his employer.

[10] Although Chancey has not provided a copy of his formal EEOC charge, he named EFC Trade in his EEOC charge information questionnaire, ECF No. 13, Ex. H, which is "sufficient" to constitute a Title VII charge, *Klump v. Mayor & City Council of Balt.*, No. JFM 09-CV-1157, 2010 WL 2384274, at *3 (June 8, 2010).

[11] Because Title VII does not apply to Daly or NATS Inc., *see supra* Part II.B.2, this Section's Title VII discussion applies only to EFC Trade.

9

26-31, 38-41.[12]  Because Chancey has no direct evidence of race discrimination, he must establish his claim by circumstantial evidence under the three-pronged, burden-shifting framework of *McDonnell Douglas Corp. v. Green*.  411 U.S. 792, 802 (1973); *Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 341 (4th Cir. 2008).

a. Chancey Has Established a *Prima Facie* Case

Under *McDonnell Douglas*, Chancey must establish a *prima facie* case of discriminatory discharge.  411 U.S. at 802.[13] Under Title VII and § 1981,[14] he must show: (1) he is a member of a protected class; (2) he suffered from an adverse employment action; (3) he was meeting his employer's "legitimate expectations" at the time of the adverse employment action; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class.  *Murray v. United*

---

[12] Title VII prohibits an employer from "discharg[ing] any individual . . . because of [his] race."  42 U.S.C. § 2000e-2(a)(1).
　　Section 1981 guarantees that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981.

[13] The burden of proving a *prima facie* case is "not onerous." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319 (2005) (citation and internal quotation marks omitted).

[14] The elements of a *prima facie* case under both statutes are the same.  *Gairola v. Commonwealth of Va. Dept. of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985).

*Food & Commercial Workers Union*, 100 F. App'x 165, 171–72 (4th Cir. 2004); *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003).

Chancey is a member of a protected class, suffered an adverse employment action by being discharged,[15] and held a position that remained open or was filled by a Caucasian employee.[16]

The defendants argue that Chancey did not meet EFC Trade's "legitimate expectations" because: (1) on June 6, 2007, Chancey was "disciplined" for "failing to abide by company policy" on student driving time; (2) on June 12, 2007, his supervisor spoke to him about the need to act professionally with students; (3) on June 16, 2007, he misused sick leave; and (4) on June 22, 2007, he recommended the termination of Bourne, his supervisor, in the Discipline Notice. ECF No. 10 at 19–21; Daly Aff. ¶¶ 5–6.

Chancey does not address these incidents. He denies being disciplined before his termination, but acknowledges that this

---

[15] *Palmisano v. Balt. Gas & Elec. Co.*, No. CCB-09-2554, 2010 WL 4117026, at *3 (Oct. 18, 2010).

[16] The defendants concede that because Chancey taught full-time on weekdays and the new Caucasian instructor taught part-time on weekends, "the position [Chancey] claims he held remained open." ECF No. 10 at 26 n.10.
 Alternatively, it would be reasonable to assume that the new employee filled Chancey's actual position because the two duties--teaching commercial driving--are substantively the same. *Cf. Primas v. Bd. of Regents*, No. 5:04CV342, 2006 WL 839242, at *1, *9 (M.D. Ga. Mar. 30, 2006) (medical unit manager's duties were "sufficiently dissimilar" from director of nursing's, rendering any comparison "legally irrelevant"). In fact, Daly attempted to offer the part-time position to Chancey before hiring the new employee. Daly Aff. ¶ 9.

11

assertion "is in dispute." ECF No. 13 at 3. He also states that Daly (1) "gave [him] a letter of recommendation," (2) never told him that his work was "substandard," and (3) maintained that the only reason for termination was that "there were not enough students." Chancey Aff. ¶¶ 8-9.

An employee "bears a burden only of producing some evidence that he was meeting [his employer's] legitimate expectations." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 743 (7th Cir. 1999). Chancey has met this burden because Daly's recommendation letter praised him as a "professional" and "great" employee. ECF No. 13, Ex. G at 1; *see Tucker v. Loyola Univ. of Chi.*, 192 F. Supp. 2d 826, 831 n.5 (N.D. Ill. 2002) (positive recommendation letter would have demonstrated fulfillment of legitimate expectations).

Furthermore, an employee only fails to meet legitimate expectations when he performs poorly for an extended time or acts outrageously.[17] The June and July 2007 incidents are not "substantial evidence" of egregious behavior or long-standing substandard performance. *King*, 328 F.3d at 149 (employer "chronicl[ed] in detail [employee's] poor performance and his supervisors' numerous concerns"). Viewed in the light most

---

[17] *See, e.g., Lewis v. Caterpillar Inc.*, 367 F. App'x 683, 685 (7th Cir. 2010) (employee "often" missed work); *Anders v. Waste Mgmt. of Wis.*, 463 F.3d 670, 676 (7th Cir. 2006) (employee tried to attack supervisor); *Sare v. Elec. Data Sys., LLC*, No. RWT 08cv1567, 2009 WL 3347251, at *3 (D. Md. Oct. 13, 2009) (employee's performance was "below expectations" for three years).

favorable to Chancey, he has shown a *prima facie* case for discriminatory discharge.

      b. The Defendants Have Shown Non-Discriminatory Reasons for Chancey's Termination

Because Chancey has established a *prima facie* case, the burden shifts to the defendants to present a legitimate, non-discriminatory reason for his termination. *McDonnell Douglas*, 411 U.S. at 802; *King*, 328 F.3d at 150. It need not be "wise, fair, or even correct . . . as long as it truly was the reason." *Kess v. Mun. Emps. Credit Union of Balt., Inc.*, 319 F. Supp. 2d 637, 645–46 (D. Md. 2004). The defendants must simply introduce evidence explaining Chancey's termination; they "need not persuade the [C]ourt that [they] w[ere] actually motivated by the proffered reasons." *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981).

Here, the defendants proffer that the "number of [commercial driving] instructors was reduced" in 2007 because of declining student enrollment, and Chancey was discharged before other instructors "because he had a recent history of disciplinary infractions." Daly Aff. ¶¶ 5-8; *see also* ECF No. 13, Ex. E at 1. The defendants have met their burden by presenting non-discriminatory reasons for Chancey's termination.

13

### c. Chancey Has Not Shown Pretext

Because the defendants have shown non-discriminatory reasons for discharging Chancey, he must establish that these reasons were a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Burdine*, 450 U.S. at 253. His opinion about the defendants' "subjective motivations are [in]sufficient." *Kess*, 319 F. Supp. 2d at 646. Instead, he must submit evidence that "would create genuine issues of material fact on whether [the] reasons [were] pretextual." *Mack v. Aiken Elec. Co-op., Inc.*, No. 92-1322, 1992 WL 332257, at *3 (4th Cir. 1992).

Although Chancey has alleged that the defendants' reasons for terminating him were "pretextual and false," Am. Compl. ¶ 14, he has produced no evidence. He argues that he should "have an opportunity for discovery" to "produce sufficient information to show that a jury could rule in his favor." ECF No. 13 at 9. However, he never filed a Rule 56(f) affidavit requesting more time for discovery. Fed. R. Civ. P. 56(f); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996).[18]

The Fourth Circuit places "great weight on the Rule 56(f) affidavit." *Id.* Explaining the "need for additional discovery in a memorandum of law in opposition to a motion for summary

---

[18] Rule 56(f) allows a court to deny summary judgment or order a continuance to enable discovery if the party "opposing the motion shows by affidavit that . . . it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f).

14

judgment is not an adequate substitute." *Id.* (citation and internal quotation marks omitted). As no evidence of pretext has been presented, summary judgment will be granted to the defendants on Chancey's Title VII and § 1981 discriminatory discharge claims.

4. Title VII and § 1981 Retaliation Claims[19]

Chancey asserts that the defendants violated Title VII and § 1981 by terminating him in retaliation for reporting Bourne's racial slur against Bills. Am. Compl. ¶¶ 19–25, 32–37. Chancey has no direct evidence of retaliation; he must establish his claims circumstantially. *Worden*, 549 F.3d at 341. Retaliation claims are analyzed under *McDonnell Douglas*. *Tawwaab v. Va. Linen Serv., Inc.*, No. AW-09-00553, 2010 WL 3000801, at *7 (D. Md. July 28, 2010).

Under Title VII and § 1981, a plaintiff may establish a *prima facie* retaliation case if he shows: (1) he engaged in protected activity; (2) his employer took adverse employment action against him; and (3) a causal connection between the protected activity and adverse action. *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003); *Munday v. Waste Mgmt. of N. Am., Inc.*, 997 F. Supp. 681, 684 (D. Md.

---

[19] Because Title VII does not apply to Daly or NATS Inc., *see supra* Part II.B.2, this Section's Title VII discussion applies only to EFC Trade.

15

1998). It is undisputed that Chancey's termination was an "adverse employment action." *Palmisano*, 2010 WL 4117026, at *3.

### a. Chancey Has Not Shown Protected Activity

Under Title VII, an employee engages in "protected activity" if he opposes an "unlawful employment practice" like race discrimination. 42 U.S.C. § 2000e-2(a)(1), -3(a). Similarly, "protected activity" under § 1981 includes opposing "policies or practices that discriminated against any person on the basis of race." *Proa v. NRT Mid Atl., Inc.*, 618 F. Supp. 2d 447, 472 (D. Md. 2009). Opposing a practice means "voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259-60 (4th Cir. 1998).

Chancey initially alleged that he "shared" a written report of Bourne's July 14, 2007 "racial epithet" with "upper management" that day. Compl. ¶ 13. However, he has apparently abandoned this assertion,[20] and has not presented the report. He now states that he told Daly about Bourne's slur "th[e] day" he gave Daly and Bourne the Discipline Notice. Chancey Aff. ¶ 4.

---

[20] *See* ECF No. 13 at 3 (stating only that Chancey "wr[ote] up" Bourne in the July 22, 2007 Discipline Notice); Chancey Aff. ¶¶ 4-5 (stating that Chancey filled out the July 22, 2007 Discipline Notice and told Daly about the slur, but mentioning no other report or date); *see also Boulware v. Isaias Tessema*, No. WMN-09-2180, 2009 WL 3806401, at *1 n.1 (D. Md. Nov. 12, 2009) (plaintiff abandoned mental handicap allegation in his complaint because his response did not mention it).

16

Because the parties do not dispute that Chancey provided the Discipline Notice on July 22, 2007--the day he was terminated--the Court will infer that he told Daly about the slur that day. *See* Am. Compl. ¶ 13; ECF No. 16 at 7–8.

However, Chancey has presented no evidence that he told Daly about the slur before he was terminated. He offers only conflicting, unsworn assertions. *Compare* ECF No. 13 at 8 ("[T]he adverse employment action [was] very shortly after Chancey himself brought [the 'Bourne incident'] to Daly's attention."), *with id.* ("[W]e do not know when Daly became aware of this issue.").

As the defendants note, the Discipline Notice itself neither mentions the racial slur nor opposes any activity that is unlawful under Title VII or § 1981. *See* ECF No. 10, Ex. 2 (Discipline Notice accusing Bourne of, *inter alia*, "profanity," "improper conduct," "destruction of company property," and "total disrespect" for Bills). Chancey has not established he engaged in protected activity because he has not shown that he opposed Bourne's slur.

### b. Chancey Has Not Shown a Causal Connection

Because Chancey has not shown that he engaged in protected activity, he cannot establish a causal connection between the purported protected activity and adverse employment action. *Bryant*, 333 F.3d at 543.

Had Chancey preserved and supported his allegation that he reported the epithet to "upper management" on July 14, 2007--thus showing that he engaged in protected activity by opposing Bourne's slur--he still would have had to show that Daly knew about that report.[21] Chancey contends that "discovery may show that Daly learned of Bourne's tirade from other sources," and "there are factual issues to be explored more thoroughly." ECF No. 13 at 7. This is insufficient.[22] Accordingly, Chancey has not established a *prima facie* retaliation case.

Even had he done so, the defendants have proffered legitimate, non-discriminatory reasons for his termination. Daly Aff. ¶¶ 5-8 (Chancey was discharged because of his recent disciplinary history and to accommodate dwindling student enrollment). Chancey has not proffered evidence that would create genuine issues of material fact on whether these reasons were pretextual. *Mack*, 1992 WL 332257, at *3.

Accordingly, summary judgment will be granted to the defendants on Chancey's Title VII and § 1981 retaliation claims.

---

[21] *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (decisionmaker must be aware that the plaintiff engaged in protected activity).

[22] Chancey has not filed a Rule 56(f) affidavit demonstrating the need for additional discovery and requesting more time. *See* Fed. R. Civ. P. 56(f).

III. Conclusion

For the reasons stated above, the defendants' motions to strike and for summary judgment will be granted.

<u>November 15, 2010</u>              _____/s/_____
Date                                  William D. Quarles, Jr.
                                      United States District Judge